# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARVA S.,

      Plaintiff,

    v.

MARTIN J. O'MALLEY,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 21 CV 5922

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Marva S. appeals the Commissioner of Social Security's decision denying her applications for benefits. For the following reasons, plaintiff's motion for summary judgment [17] is granted, defendant's motion for summary judgment [22] is denied, and the case is remanded for further administrative proceedings.[1]

## Background

Plaintiff applied for a period of disability and disability insurance benefits in June 2019 and for supplemental security income in January 2020, alleging an onset date of December 1, 2016. [14-1] 112. Plaintiff's claims were denied initially, on reconsideration, and by an administrative law judge in August 2020. [*Id.*] 112-24. In December 2020, the Appeals Council remanded the case to the ALJ because the hearing recording was only partly audible and the record was thus incomplete. [*Id.*] 130. The remand order also instructed the ALJ to "[o]btain additional evidence concerning the claimant's mental impairment(s) in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence." [*Id.*]. On remand, the ALJ held a second hearing and issued a new decision denying plaintiff's claims. [*Id.*] 13-25. The Appeals Council denied further review in September 2021 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [14-1], which refer to the page numbers in the bottom right corner of each page.

Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claims in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [14-1] 15. At step two, the ALJ determined that plaintiff had the following severe impairments: schizophrenia; schizoaffective disorder, depressive type; unspecific psychotic disorder; cannabis use disorder; and alcohol use disorder. [*Id.*] 15-16. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 16-19. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, though she required multiple non-exertional limitations: limited to making simple work-related decisions while performing simple, routine, repetitive tasks; incapable of performing production-rate-pace work where tasks must be performed quickly; capable of responding to no more than occasional and gradually introduced changes in a routine work setting; capable of frequent interactions with supervisors, coworkers, and the public incidental to the work being performed; no group or team-based tasks; and requiring an additional 15 minute break spread throughout the workday. [*Id.*] 19-23. At step four, the ALJ determined that plaintiff could not perform her past relevant work. [*Id.*]. At step five, the ALJ ruled that jobs existed in significant numbers in the national economy that plaintiff could perform: industrial cleaner (58,000 jobs), laundry worker II (20,000 jobs), and salvage laborer (44,000 jobs). [*Id.*] 23-24. For these reasons, the ALJ concluded that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting Biestek v. Berryhill, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [7, 9].

**Discussion**

Plaintiff argues that this case should be remanded because (1) substantial evidence does not support the ALJ decision to reject the opinions of her treating psychiatrist, Dr. Sean Conrin; (2) the ALJ created an evidentiary deficit when she rejected all opinion evidence in the record and impermissibly "played doctor" to determine plaintiff's RFC; and (3) the ALJ erred in evaluating plaintiff's subjective symptom allegations. *See* [17] 3-16. Because the ALJ committed multiple errors in evaluating plaintiff's schizophrenia and the work-related limitations it caused, and because those errors seriously undermine multiple aspects of the decision denying benefits, a remand is required.

"As the Seventh Circuit has noted, the temptation to play doctor is particularly acute where, as here, the claimant has psychological impairments. In a series of cases over the last couple decades, the Seventh Circuit has repeatedly faulted ALJs for having a general lack of understanding of complicated impairments such as bipolar disorder, schizophrenia, and PTSD." *Anthony S. v. Saul*, No. 18 CV 50220, 2020 WL 30601, at *2 (N.D. Ill. Jan. 2, 2020). The court in *Anthony S.* identified several "common fallacies or misconceptions made by ALJs" in cases involving a claimant with psychological impairments: (1) "[s]ymptoms are often episodic"; (2) psychological impairments are "not easy to treat in many cases"; (3) "[p]sychological impairments may be subtly confused with other non-medical issues"; and (4) "[c]laimants may lack insight into their condition or be unable to communicate effectively about it." *Id.*, at *2-4. Unfortunately, the ALJ's decision in this case embodies a number of these fallacies–and more besides.

## A.    Lack of Consistent Treatment

First, the ALJ extensively relied on plaintiff's failure to maintain a consistent treatment regimen for her schizophrenia when evaluating her mental functioning,[3] in determining her RFC,[4] and in evaluating her subjective symptom allegations.[5] But

---

[3] [14-1] 16-17 (finding that plaintiff had moderate limitation in interacting with others and emphasizing "dearth of evidence of treatment from November 2016 until July 2017" and noting that plaintiff "was seen for a solitary mental health treatment session" after her 2017 inpatient hospitalization and before her 2018 inpatient hospitalization); [*id.*] 18 (finding that plaintiff had moderate limitation in concentrating, persisting, and maintaining pace and observing that "the common precursor" in plaintiff's experience with "worsening psychoses and hallucinations" was "a scarcity of treatment and ongoing substance use").

[4] [14-1] 21 ("as for her behavior and the circumstances leading up to this hospitalization, the claimant was noncompliant with medication and had been using cannabis since her teens, which was consistent with the claimant's positive test on admission"); [*id.*] (recognizing that one consequence of plaintiff's "minimal treatment" was "being reportedly asked to leave her apartment due to her behavior").

[5] [14-1] 20 (finding plaintiff's statements "not entirely consistent with the medical evidence" because, *inter alia*, "the common pattern demonstrated here . . . is a combination of lack of

the ALJ never meaningfully considered whether plaintiff's schizophrenia itself contributed to the repeated and extensive gaps in the treatment record. "[O]ne of the most serious problems in the treatment of mental illness" is "the difficulty of keeping patients on their medications." *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010). Given that difficulty, the ALJ "must consider the effect mental health illnesses may have on a claimant's ability to comply with treatment," *Pulley v. Berryhill*, 295 F. Supp. 3d 899, 901 (N.D. Ill. 2018), and "must not draw any inferences about a claimant's condition" from her failure to comply with prescribed treatment "unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotation marks omitted). Despite these requirements, the ALJ's decision gives no indication that she explored why plaintiff was unable to obtain treatment on a consistent basis, let alone whether her schizophrenia interfered with her ability to obtain needed treatment.

In the Commissioner's view, plaintiff offers nothing but "mere speculation" to support her argument that her schizophrenia made it difficult to participate in treatment. [23] 10. But the inference that plaintiff's mental impairments interfered with her ability to obtain needed treatment practically leaps off the pages of the administrative record. One glaring example is Dr. Conrin's repeated notation that plaintiff refused to take oral medications. *See* [14-1] 622 (observing in July 2019 that plaintiff "would not adhere to oral meds and was eventually hospitalized by this author in 8/18" and stating that if plaintiff "would" adhere to "oral meds" Conrin would "augment her treatment"); [*id.*] 715 (noting in November 2019 that Conrin was "working to maintain current stability with the hopes that she will slowly improve with more time in treatment and at some point hopefully accept oral meds"). Nothing in the treatment record suggests that plaintiff made (or was even capable of making) a reasoned, well-informed choice that the benefits of taking oral medications were outweighed by their adverse side effects or some other consideration. Rather, it appears probable that plaintiff's unexplained refusal, against her doctor's repeated urging, to take oral medications was attributable to her severe schizophrenia. Another example was Dr. Conrin's repeated observation that plaintiff had no or poor insight into her condition and regularly denied or minimized her symptoms. *See* [*id.*] 620, 647, 649, 663, 710, 712, 729, 731, 753, 762, 764; *see also* [*id.*] 578 (findings from 2017 comprehensive psychiatric evaluation that plaintiff has "impaired" judgment, "as evidenced by: Refusal to accept treatment," and "impaired" insight, "as evidenced by: Denial of mental illness"). Thus, one explanation for plaintiff's refusal to obtain treatment could have been her lack of insight and her repeatedly professed, but entirely false, belief that she had no or only mild symptoms for which treatment was not required. *See Lewis v. Astrue*, No. 10 C 6447, 2012 WL 5342669, at *7 (N.D. Ill. Oct. 25, 2012) ("by definition, a claimant with poor insight cannot be expected to

---

treatment and substance abuse leading to an increase in symptoms that ultimately necessitates hospitalization").

understand the true nature of his impairment"). But this obvious possibility was simply ignored by the ALJ.[6]

## B. Lack of Insight and Denial of Symptoms

Second, the ALJ also relied on plaintiff's statements about her mental functioning[7] and her ability to perform activities of daily living[8] to find that plaintiff was not disabled. As just seen, however, Dr. Conrin's notes establish that plaintiff had little, if any, insight into her own condition and that she regularly denied or minimized her symptoms. Yet the ALJ apparently accepted at face value plaintiff's statements about her functional abilities without weighing them against Dr. Conrin's opinion on this score and the multiple treatment notes supporting that opinion. *See Anthony S.*, 2020 WL 30601, at *4; *Lewis*, 2012 WL 5342669, at *7.

## C. Plaintiff's "Improvement"

Third, the ALJ heavily relied on Dr. Conrin's finding that plaintiff's condition had improved after she received Invega Trinza injections in July 2019. In doing so, however, the ALJ ignored not only the maxim that "improvement alone does not necessarily mean that [a claimant] is not disabled," *Brett D. v. Saul*, Case No. 19 C 8352, 2021 WL 2660753, at *4 (N.D. Ill. June 29, 2021), but also the caveat that

---

[6] During a November 2019 exam with Dr. Conrin, plaintiff said that she was tolerating her Invega Trinza injections and that "she is doing well." [14-1] 710. According to the ALJ, plaintiff's statement that she "benefit[ted] from the medication she was receiving . . . lends credence to the assertion that she had insight into the need for ongoing treatment[.]" [*Id.*] 19. There is no substantial evidence in the record to support this "assertion": not only is it contrary to the great weight of the treatment record, *see* [*id.*] 620, 647, 649, 663, 712, 729, 731, 753, 762, 764, it is even contradicted by the November 2019 treatment note itself. There Dr. Conrin noted (again) that plaintiff "denies all symptoms" and that her answers to questions were "still minimal and *directed towards presenting herself in a way that minimized symptoms.*" [*Id.*] 710 (emphasis added). If the ALJ concludes on remand that plaintiff had adequate insight into her condition such that her schizophrenia presented no barrier to her ability to obtain treatment, the ALJ should consider what factors contributed to the lack of treatment (1) before plaintiff's 2017 hospitalization, (2) her attendance at only one "solitary" treatment session before her 2018 hospitalization, (3) her noncompliance with prescribed medications before the 2018 hospitalization, (4) the four-month treatment gap between August 2018 and December 2018, and (5) the lack of consistent follow-up care between December 2018 and April 2019–all of which the ALJ documented in her decision. *See* [14-1] 17-18, 21.

[7] *See, e.g.*, [14-1] 16 (discussing plaintiff's functional reports, in which she "denied needing any type of reminders and stated she was 'good' at following written and spoken directions"); [*id.*] (noting without commenting on plaintiff's false claim that she and her mother moved out of apartment because lease expired and not because of plaintiff's behavior); [*id.*] (highlighting plaintiff's claim that "she gets along 'good' with authority figures").

[8] *See, e.g.*, [14-1] 18 (highlighting plaintiff's claim that she had "no issues regarding her ability to handle stress or change in routine").

5

Conrin himself placed on plaintiff's improvement. There is no question that the record shows that plaintiff experienced clearer thinking, less response to internal stimuli, and improved behavior with these injections. *See* [14-1] 622, 715. But there is also no question that, in Dr. Conrin's view, "prominent residual symptoms remain[ed]" after the injections were administered, and that these symptoms "are barriers to treatment and her ability to obtain social resources." [*Id.*] 622. Not only was plaintiff still resistant to "oral meds . . . lab testing, and/or efforts to obtain social resources such as SSI," but Dr. Conrin was still "working to maintain current stability with the hopes that she will slowly improve with more time in treatment" with "a main focus on safety and prevention of relapse." [*Id.*]. The ALJ acknowledged that the injections left "some residual symptoms" for plaintiff to deal with, *see* [*id.*] 22, but she never accounted for Conrin's opinion that this was a limited, relative improvement from plaintiff's baseline condition; that the remaining symptoms were barriers to treatment that plaintiff needed to overcome; or that Conrin's focus was primarily on keeping plaintiff safe and preventing a relapse, which is in serious tension with the ALJ's unqualified findings about plaintiff's improvement. There is thus no logical bridge in the ALJ's decision from the evidence of the "mild to moderate" improvement that Conrin observed, *see* [*id.*] 754, to the ALJ's conclusion that plaintiff could work. *See Brett D.*, 2021 WL 2660753, at *4 ("Improvement is a relative concept and, by itself, does not convey whether or not a patient has recovered sufficiently to no longer be deemed unable to perform particular work on a sustained basis.").

### D.    Treating Physician's Opinion

Fourth, substantial evidence does not support the ALJ's rejection of Dr. Conrin's opinion. The ALJ concluded that Conrin's opinion that plaintiff had marked or extreme limitations in all areas of functioning was "not supported by her mental status exams or evidence of improvement." [14-1] 23. As just discussed however, the ALJ significantly overstated the nature of plaintiff's improvement and failed to consider whether the record supported Conrin's opinion that residual symptoms posed significant barriers to treatment and that Conrin was left to focus on preventing a relapse. What's more, Dr. Conrin's treatment notes consistently documented that plaintiff (1) mumbled and swore to herself during exams, *see* [*id.*] 618, 661, 674, 710, 729, 762; (2) presented with delusions, *see* [*id.*] 674 (plaintiff's false claim that she was moving to a new apartment she paid for and that she had money left over from a previous job; (3) denied or minimized her symptoms, *see* [*id.*] 620, 647, 649, 663, 710, 712, 729, 731, 753, 762, 764; and (4) had an unkempt or "notably malodorous" appearance, *see* [*id.*] 619, 649, 663, 710. All of this was at least consistent with and provided some support for Dr. Conrin's statements that plaintiff's schizophrenia caused her to experience poor memory, personality changes, emotional lability, manic syndrome, hostility and irritability, perceptual disturbances, difficulty thinking or concentrating, social withdrawal or isolation, blunt affect, delusions or hallucinations, and paranoia. [*Id.*] 753. In the ALJ's view, Dr. Conrin's opinions were contradicted by some findings in a 2017 comprehensive psychiatric evaluation that

6

immediately preceded her inpatient hospitalization. *See* [*id.*] 23 (citing [*id.*] 577-78).
As the ALJ noted, this evaluation documented that plaintiff could spell "world"
backwards, count backwards from 20 by ones, recite the months of the year in reverse,
and perform a three-step task. [*Id.*] 578. But the evaluation also documented that
plaintiff could not name three large cities, did not know how much change she would
receive if she bought something that cost $3.85 and paid for it with a $5 bill, could
not correctly perform the serial 7s test (which tests for the ability to sustain attention
and concentration, not math skills, *see Renee E. v. Kijakazi*, No. 19 CV 7840, 2022
WL 3576662, at *6 (N.D. Ill. Aug. 19, 2022)). In addition, the comprehensive
psychiatric evaluation that immediately preceded plaintiff's 2018 hospitalization
reflected that she could not answer questions designed to measure her recent and
long-term memory, could not follow a three-step command or perform the serial 7s
test, could not count backwards from 20 or spell "world" backwards, and could not
answer how an apple and an orange were alike. *See* [14-1] 517-18. That the ALJ relied
on the more favorable findings in the 2017 evaluation without explaining how the
unfavorable findings in the 2017 and 2018 evaluations did nor support or were
inconsistent with Dr. Conrin's opinion suggests the ALJ's was cherry-picking
evidence to support her decision that plaintiff was not disabled.

### E.    Creating an Evidentiary Deficit and Playing Doctor

Fifth, and contrary to the Commissioner's arguments, *see* [23] 11-12, this was
a case where the ALJ's rejection of all the opinion evidence in the record created an
evidentiary deficit that left the ALJ to play doctor. Courts in this District have
recognized that an "ALJ's decision to discount all medical opinion evidence in the
record [can] create[ ] an evidentiary gap that render[s] the ALJ's RFC unsupported
by substantial evidence." *Gail A. v. Kijakazi*, No. 21 C 502, 2023 WL 8935003, at *3
(N.D. Ill. Dec. 27, 2023). The ALJ is not required to support her RFC determination
with a specific medical opinion, but when the ALJ rejects all medical opinion evidence
in the record she has "a duty to conduct an appropriate inquiry to fill that gap." *Id.*
"An ALJ is not allowed to substitute his own lay opinions to fill an evidentiary gap in
the record." *Id.*, at *4. Here, the ALJ rejected not only Dr. Conrin's opinions, but also
the opinions of the state agency psychological consultants who concluded, rather
dubiously, that plaintiff's schizophrenia was non-severe. *See* [14-1] 22. The ALJ
"could have filled in the evidentiary deficit by seeking further information . . . [by]
obtaining an opinion from an independent examining physician or a medical expert."
*Id.*[9] Instead, the ALJ "created a situation where the RFC could only be supported by

---

[9] Notably, the Appeals Council's remand order instructed the ALJ to "[o]btain additional
evidence concerning the claimant's mental impairment(s) in order to complete the
administrative record in accordance with the regulatory standards regarding consultative
examinations and existing medical evidence." [14-1] 130. The Commissioner contends that
the ALJ had no obligation to obtain additional evidence respecting plaintiff's mental
impairments, *see* [14-1] 23, but the Commissioner does not make any argument about the
import of this language. Given the multiple other errors in the ALJ's decision, the Court does

her lay interpretation of medical findings because she had rejected all relevant medical opinions as unpersuasive." *Arthur P.L. v. Comm'r of Soc. Sec.*, Case No. 3:23-CV-111-MGG (N.D. Ind. Mar. 22, 2024). And this is exactly what the ALJ did. Despite the lack of any medical evidence to support her conclusion, and notwithstanding Dr. Conrin's express opinion that plaintiff's symptoms were "not due to drug use," [14-1] 755, the ALJ found that plaintiff's substance abuse was a key–if not the preeminent–factor causing the worst of her symptoms. *See* [14-1] 18 ("again, the common precursor . . . was a scarcity of treatment and ongoing substance abuse"); (noting that plaintiff's 2018 hospitalization occurred "in the presence of ongoing substance abuse"); [*id.*] 20 ("the common pattern demonstrated here and in subsequent hospitalizations is a combination of lack of treatment and substance abuse leading to an increase in symptoms"); [*id.*] 22 ("The claimant improved in mental functioning in the presence of appropriate treatment, and with the absence of substances."); [*id.*] 23 (linking plaintiff's RFC to her "abstinence from substances"). Even if the ALJ had been free to ignore Dr. Conrin's opinion on this issue, the reflects little more than an apparent correlation between substance use and some episodes of exacerbated symptoms. Yet the ALJ ignored the possibility that plaintiff's schizophrenia "precipitate[d] substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms," *Kangail v. Barnhart*, 457 F.3d 627, 629 (7th Cir. 2006), and the ALJ was "simply not qualified to make [her] own medical determinations." *Tamara H. v. Kijakazi*, No. 1:21-cv-153-MJD-TWP, 2022 WL 22883189, at *3 (S.D. Ind. June 21, 2022). Nor did the ALJ test her hypothesis about the relationship between plaintiff's substance abuse and exacerbated symptoms against the evidence that, two weeks into her 2018 hospitalization–when she was presumably sober–plaintiff's symptoms became so worrisome that she was declared to be an "imminent danger" to herself and others and given an emergency dose of sedatives. *See* [14-1] 548.

## F.    Speculations about a "Sympathetic Doctor"

Finally, there is no support whatsoever in the record for the ALJ's speculation that Dr. Conrin's opinion was "a sympathetic or accommodating opinion for his patient," [14-1] 23, rather than one based on his professional medical judgment and years of treating plaintiff. "[T]he ALJ's notion that treating physicians such as Dr. [Conrin] lie about their patients' capabilities is based on nothing but speculation and a general suspicion of treating physicians." *Rockwell v. Saul*, 781 F. App'x 532, 537 (7th Cir. 2019).

---

not need to resolve this issue but urges the ALJ to consider the Appeals Council's order when conducting further proceedings on remand.

## Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment [17] is granted and defendant's motion for summary judgment [22] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: January 3, 2025**